Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2026 09:14 AM CDT

- 764 -

**Nebraska Supreme Court Advance Sheets
321 Nebraska Reports**
PINPOINT COMMUNICATIONS v. GAGE COUNTY
Cite as 321 Neb. 764

Pinpoint Communications, Inc., appellee, v. Gage County, Nebraska, a political subdivision of the State of Nebraska, et al., appellants.

___ N.W.3d ___

Filed July 10, 2026.    No. S-25-270.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

2. **Administrative Law: Appeal and Error.** In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency.

3. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.

4. **Administrative Law: Appeal and Error.** The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.

5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

6. **Administrative Law: Appeal and Error.** A board or tribunal exercises judicial functions if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. But where a board or tribunal decides no question of adjudicative fact and no statute requires it to act in a judicial manner, the orders are not "judicial" and are not reviewable by error proceedings.

7. **Evidence: Proof: Words and Phrases.** Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. They are roughly the kind of facts which would go to a jury in a jury case.

Appeal from the District Court for Gage County: JULIE D. SMITH, Judge. Affirmed.

Jeffery R. Kirkpatrick, of Governmental Law, L.L.C., for appellants.

Sheila A. Bentzen, Andrew S. Pollack, and Amber R. Buskness, of Rembolt Ludtke, L.L.P., for appellee.

Michael T. Hilgers, Attorney General, Cody S. Barnett, Zachary B. Pohlman, and Katelyn Rich, Senior Certified Law Student, for amicus curiae Public Service Commission.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, BERGEVIN, and VAUGHN, JJ.

PAPIK, J.

After the Nebraska Public Service Commission (PSC) awarded Pinpoint Communications, Inc. (Pinpoint), a grant to construct a broadband internet network in rural Gage County, Nebraska, Pinpoint applied for a permit from the county to construct the network under and along a county right-of-way. The Gage County Board of Supervisors denied the application. The county had recently awarded funding to another provider to construct a broadband network, and the supervisors who voted to deny the application expressed objections to Pinpoint's receipt of public funds to serve some of the same areas. Pinpoint responded by filing a successful petition in error in the district court. The district court concluded that the board of supervisors was attempting to reverse the funding decision of the PSC and that it lacked authority to do so. From this decision, the county and the members of the board

of supervisors now appeal. We find the district court did not err and therefore affirm.

## BACKGROUND

*PSC Awards Grant to Pinpoint.*

Pinpoint sought grant funding from the PSC to construct a proposed broadband internet network in rural Gage County. The funding was sought pursuant to a statute within the Nebraska Broadband Bridge Act that authorizes the PSC "to facilitate and fund the development of broadband networks in unserved and underserved areas." Neb. Rev. Stat. § 86-1303 (Reissue 2024). See, also, Neb. Rev. Stat. § 86-1301 et seq. (Reissue 2024). The PSC entered an order awarding Pinpoint a grant to construct its proposed network.

After the PSC awarded the grant to Pinpoint, another broadband provider, AMG Technology Investment Group, LLC, doing business as Nextlink Internet (Nextlink), asked the PSC to reconsider its decision. Nextlink argued that a portion of Pinpoint's proposed network overlapped with a network Nextlink was constructing in Gage County. The PSC rejected Nextlink's request and noted that Nextlink's objection to the grant was filed after the deadline for doing so had expired and that Nextlink had failed to provide the information necessary to determine whether the grant should be reconsidered.

*Board of Supervisors Denies*
*Application for Permit.*

Armed with grant funding from the PSC, Pinpoint applied to the board of supervisors for permission to construct utilities under and along a county right-of-way. The county highway department recommended approval, and the application was initially listed on the board's consent agenda. Later, however, the application was removed from the consent agenda.

The board of supervisors eventually discussed the application extensively at a board meeting. The meeting was audio

recorded, transcribed, and made part of the transcript prepared in the petition in error proceedings. During the discussion, some supervisors observed that portions of Pinpoint's proposed network would serve areas that would also be served by the network Nextlink was constructing and that the county had provided funding to Nextlink. Supervisors expressed objections to Pinpoint's receipt of public funds to serve areas that would be served by another provider that was also receiving public funds. One of the supervisors also observed that the board could not direct Nextlink to serve a different area because its network was already partially installed.

A majority of the board of supervisors eventually voted to deny the permit application. Five members voted to deny, and two voted in favor. Immediately after the vote was conducted, a supervisor stated:

> [T]his is, obviously, a discussion that's not about [Pinpoint]. This is a discussion that fell down to funding, over funding, or refunding of tax dollars.
>
> I guess, that's — the main [emphasis] I want to make on this is, this, in no way, is reflective of Pinpoint or the quality of [its] work.

*District Court Sustains Petition in Error.*

After its permit application was denied, Pinpoint filed a petition in error in the district court, naming as respondents the county and the members of the board of supervisors in their official capacities. For ease of reference, we hereinafter refer to the respondents collectively as "the board." In its petition in error, Pinpoint alleged that the board's decision exceeded its authority, was arbitrary and capricious, and was not supported by sufficient, relevant evidence.

The district court sustained the petition in error. The district court concluded that the board's decision "encroached on the jurisdiction of the PSC" and was based on irrelevant evidence and therefore arbitrary and capricious.

The board appeals.

## ASSIGNMENT OF ERROR

The board assigns numerous errors on appeal, but they can be condensed and restated as one: The district court erred by sustaining Pinpoint's petition in error.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

[2-4] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Id.* The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Id.*

## ANALYSIS

*Petition in Error Jurisdiction.*

[5] We first address whether the board's decision was properly challenged via a petition in error. This issue was not initially raised by the parties. But if a petition in error was not the proper vehicle to challenge the board's decision, the district court lacked jurisdiction and, consequently, so would we. See, e.g., *Dodge Cty. Humane Soc. v. City of Fremont*, 314 Neb. 714, 992 N.W.2d 747 (2023). And, as we often say, before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of

whether the issue is raised by the parties. *Id.* At our direction, the parties filed supplemental briefs on this issue.

In a petition in error proceeding, Neb. Rev. Stat. § 25-1901 (Reissue 2016) provides that "[a] judgment rendered or final *order made* by any tribunal, board, or officer *exercising judicial functions* and inferior in jurisdiction to the district court may be reversed, vacated, or modified by the district court . . . ." (Emphasis supplied.) In this case, we can conclude with no hesitation that the board is inferior in jurisdiction to the district court and that its denial of Pinpoint's application qualifies as a final order. The only remaining question is whether in denying the application, the board was "exercising judicial functions." *Id.*

[6,7] Under our case law, a board or tribunal exercises judicial functions if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. See *Dodge Cty. Humane Soc.*, *supra*. But where a board or tribunal decides no question of adjudicative fact and no statute requires it to act in a judicial manner, the orders are not "judicial" and are not reviewable by error proceedings. *Id.* Adjudicative facts are facts which relate to a specific party and are adduced from formal proof. *Id.* Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. *Id.* They are roughly the kind of facts which would go to a jury in a jury case. *Id.*

After we issued our supplemental briefing order, the board took the position that it had not exercised judicial functions when it denied Pinpoint's application. The board argues that in denying Pinpoint's application, it decided no questions of adjudicative fact and no statute required it to act in a judicial manner. Instead, the board argues that its decision to deny Pinpoint's application was a discretionary, policy decision.

The board can and did point to several cases in which this court and the Nebraska Court of Appeals have held that an inferior board or tribunal did not act judicially because it was exercising discretion that was not judicial in nature.

For example, in *Sarpy Cty. Bd. of Comrs. v. Sarpy Cty. Land Reutil.*, 9 Neb. App. 552, 615 N.W.2d 490 (2000), the Court of Appeals held that a decision by a county commission to sell real property acquired through tax foreclosure to a municipality for $1 rather than through a public bidding process could not be challenged via a petition in error proceeding. The court explained that the governing statute did not require the commission to determine any facts before deciding how to dispose of property, but instead committed that decision to the commission's sole discretion. Accordingly, the court explained, the decision of how to dispose of the property was a "policy" or "political" decision, rather than a judicial one. *Id.* at 561, 615 N.W.2d at 497.

The Court of Appeals later relied on *Sarpy Cty. Bd. of Comrs., supra*, to reach a similar conclusion in *Camp Clarke Ranch v. Morrill Cty. Bd. of Comrs.*, 17 Neb. App. 76, 758 N.W.2d 653 (2008). There, the Court of Appeals held that a county board's decision to vacate a public road could not be challenged via a petition in error because the decision was not judicial in nature. The governing statute in that case authorized the county board to vacate a public road "'as in the judgment of the board the public good may require.'" *Id.* at 78, 758 N.W.2d at 656 (quoting Neb. Rev. Stat. § 39-1725 (Reissue 2004)). The Court of Appeals rejected the argument that a determination of whether vacating a public road would be in the "public good" was a finding of adjudicative fact. Rather, the Court of Appeals concluded that a judgment as to what the public good required was an exercise of a discretion "not judicial in nature." *Camp Clarke Ranch*, 17 Neb. App. at 79, 758 N.W.2d at 656.

Finally, in *Dodge Cty. Humane Soc. v. City of Fremont*, 314 Neb. 714, 992 N.W.2d 747 (2023), we determined that a city council's decision to send a letter terminating a contract was not an exercise of a judicial function. We cited approvingly to both *Sarpy Cty. Bd. of Comrs., supra*, and *Camp Clarke*

*Ranch, supra*, and explained that the discretion exercised by the city council in that instance was not judicial in nature.

We disagree with the board, however, that the decision to grant or deny the utility permit application in this case was akin to the decisions at issue in the foregoing cases. We reach that conclusion primarily because of a statute that grants telecommunications companies the right to construct telecommunications lines along public highways if certain conditions are met. Neb. Rev. Stat. § 86-704(1) (Reissue 2024) provides:

> Any telecommunications company, incorporated or qualified to do business in this state, is granted the right to construct, operate, and maintain telecommunications lines and related facilities along, upon, across, and under the public highways of this state, and upon and under lands in this state, whether state or privately owned, except that (a) such lines and related facilities shall be so constructed and maintained as not to interfere with the ordinary use of such lands or of such highways by the public and (b) all aerial wires and cables shall be placed at a height of not less than eighteen feet above all highway crossings.

This language grants qualifying telecommunications companies a right to construct lines and related facilities under and along a county right-of-way so long as the conditions set forth in § 86-704(1)(a) and (b) are met. And while a county board would have authority to determine whether a proposed project will meet those conditions, a county board's determination of whether those conditions have been met is not an exercise of the expansive discretion granted by the statutes at issue in *Sarpy Cty. Bd. of Comrs., supra*, and *Camp Clarke Ranch, supra*. To the contrary, to determine whether those conditions have been met, a county board must make determinations of adjudicative fact, a hallmark of the exercise of judicial functions. See *Dodge Cty. Humane Soc., supra*.

The board resists the notion that its authority to deny applications like the one filed by Pinpoint here is limited by pointing to § 86-704(3). The version of that subsection in effect

at the time the board denied Pinpoint's application provided as follows:

> Consent from a governing body for the use of a public highway within a municipality shall be based upon a lawful exercise of its statutory and constitutional authority. Such consent shall not be unreasonably withheld, and a preference or disadvantage shall not be created through the granting or withholding of such consent. A municipality shall not adopt an ordinance that prohibits or has the effect of prohibiting the ability of a telecommunications company to provide telecommunications service.

§ 86-704(3).

It is not clear to us that this statute even pertains to Pinpoint's application, as the language refers to the use of a public highway "within a municipality" and Pinpoint's project served rural areas. See *id*. But even assuming for the sake of argument that it does, we do not read this language to grant to local governing bodies unbounded discretion when considering applications to construct telecommunications lines and related facilities along public highways. The language instead requires local governing bodies considering such applications to act reasonably and within their statutory and constitutional authority. Requirements of this kind are not inconsistent with acting in a judicial manner. See *Sarpy Cty. Bd. of Comrs. v. Sarpy Cty. Land Reutil.*, 9 Neb. App. 552, 560, 615 N.W.2d 490, 496 (2000) ("[w]hen the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way [in] which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial") (internal quotation marks omitted).

For the reasons we have discussed, we hold that § 86-704 directs county boards to act in a judicial manner when considering applications to construct telecommunications lines and related facilities along public highways. Accordingly, Pinpoint properly challenged the board's denial of its application through a petition in error, and we have jurisdiction

over this appeal. We will now consider the board's argument that the district court erred by granting relief to Pinpoint on its petition.

*Petition in Error Merits.*

The district court concluded that the board denied Pinpoint's application because it disapproved of both Pinpoint's and Nextlink's receipt of government funds to construct broadband networks that would serve some of the same areas. In challenging the district court's decision, the board does not dispute that it denied Pinpoint's application for this reason. The board acknowledges that it did not deny the application based on concerns that Pinpoint's proposed network would interfere with the affected land or roads. The board admits that it denied Pinpoint's application solely to prevent "the tax subsidized overbuilding of broadband access." Brief for appellants at 11.

According to the board, it was permitted to deny Pinpoint's application for this reason because in doing so, it was merely trying to "secur[e] economy in governmental expenditures," something it contends a statute, Neb. Rev. Stat. § 23-114.03(11) (Reissue 2022), authorizes it to do. Brief for appellants at 12. This argument is flawed in multiple respects. First, the statute the board invokes applies to considerations county boards may take into account when enacting *zoning regulations* and has no apparent application to the circumstances at issue in this case. Even if that is set aside, the board ignores that its denial of Pinpoint's application would not save any *county* funds. In fact, denial of Pinpoint's application would not save *any* government funds unless Pinpoint's inability to complete its proposed network resulted in the PSC not paying Pinpoint the grant money it had previously awarded.

The board's stated goal of preventing the inefficient expenditure of taxpayer dollars would thus be accomplished only if its denial of Pinpoint's application has the effect of reversing the PSC's funding decision. But the Legislature gave the

PSC—not the board—sole authority to award the grant at issue. As we have noted, the Nebraska Broadband Bridge Act gave the PSC authority to issue grant funding to providers of broadband networks. The PSC exercised that authority by issuing a grant to Pinpoint, and Nextlink failed to properly avail itself of procedures to challenge that grant. Further, the board can point to no statute that gives it the authority to nullify the PSC's funding decision.

As the district court correctly observed, "it was up to the PSC" and not the board "to determine whether the overlap in funding warranted a denial of [Pinpoint's] application." We agree with the district court that by attempting to nullify the PSC's grant to Pinpoint, the board acted outside its authority, and that it was proper to sustain Pinpoint's petition in error on this basis. See *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017) (in reviewing administrative agency decision on petition in error, both district court and appellate court determine whether agency acted within jurisdiction).

In its reply brief and at oral argument, the board, perhaps recognizing the tenuous nature of its initial position, backtracked to some degree. Rather than claiming that its action was an attempt to dictate how the PSC grant money was spent, the board suggested in its reply brief that the PSC "may well have confirmed the grant under the principle that Pinpoint had done everything within its corporate discretion to comply with the grant conditions." Reply brief for appellants at 5-6. Along those same lines, counsel for the board asserted at oral argument that the board was merely attempting to "send a message" to the PSC and to Pinpoint that it did not approve of the PSC's funding decision.

These late adjustments cannot save the board's case. We do not question the board's right to express its disagreement with the funding decisions of the PSC, but we are aware of no statutory or constitutional authority that permits the board to send that message by denying an application on which it otherwise

found no fault. The district court did not err in sustaining Pinpoint's petition in error.

## CONCLUSION

The PSC exercised its statutory authority to issue a grant to Pinpoint. We agree with the district court that the board lacked authority to nullify that grant through denial of Pinpoint's application and that no other basis supported denying Pinpoint's application. Accordingly, we affirm.

AFFIRMED.